UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

CIVIL ACTION NO. 09-242-KSF

MICHAEL ANGELO NORTH                                                          PLAINTIFF

v.                                  **OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner of Social Security           DEFENDANT

\* \* \* \* \* \* \*

The plaintiff, Michael Angelo North, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claim for period of disability and disability insurance and Supplemental Security Income. This Court, having reviewed the record, will affirm the Commissioner's decision, which this Court finds was made pursuant to proper legal standards and supported by substantial evidence.

I.        **FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiff, Michael A. North, filed his claim for disability insurance benefits and Supplemental Security Income on September 8, 2006, alleging disability beginning June 15, 2002 [TR 43-46]. North's initial applications were denied on January 10, 2007, and denied upon reconsideration on May 3, 2007 [TR 43-46]. North then appeared at a hearing before an Administrative Law Judge ("ALJ") on January 17, 2007 [TR 20]. The ALJ issued an unfavorable ruling (finding Mr. North "not disabled") on April 16, 2008 [TR 9-17]. This became the commissioner's final decision on May 12, 2009 when the Appeals Council denied North's

request for review [TR 1-3]. North has exhausted his administrative remedies and filed a timely action in this Court. The case is now ripe for review pursuant to 24 U.S.C. § 405(g).

At the time the ALJ rendered his decision, North was 32 years of age. North (as determined by the ALJ and uncontested by any party in the briefs before this Court) had a twelfth-grade education and past relevant work experience as a tree trimmer, janitor, and welder. [TR 11]. North claims he became unable to work beginning June 15, 2002 [TR 11] due to back pain, knee pain, headaches, high blood pressure, high cholesterol, and blackouts [TR 22-27].

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the ALJ must follow. 20 C.F.R. § 404.1520(a)-(e); *see also* Walters v. Commissioner of Social Security, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, summarized by the Court in Walters, are as follows:

  (1)   If claimant is doing substantial gainful activity, he is not disabled.

  (2)   If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

  (3)   If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

  (4)   If claimant's impairment does not prevent him from doing past relevant work, he is not disabled.

  (5)   Even if claimant's impairment does prevent him from doing past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Id.

The burden of proof is on the claimant through the first four steps of the process to prove claimant's disability. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). If the ALJ reaches the

fifth step without finding that a claimant is not disabled, then the burden shifts to the Commissioner to consider the claimant's residual functional capacity ("RFC"), age, education, and past work experience to determine if he could consider other work. If not, claimant would be deemed disabled. 20 C.F.R. § 404.1520(g).

In this case, the ALJ found that North met the insured status requirements of the Social Security Act through June 30, 2007 [TR 11]. Then, the ALJ began the five-step analysis of North's claim. At Step One, the ALJ found that North had not engaged in substantial gainful activity since June 15, 2002, the alleged onset date [TR 11]. At Step Two, the ALJ determined that North had a number of severe impairments: disorders of the back, other disorders of the bone and cartilage with right shoulder pain and knee pain, a history of kidney stones, a history of bronchitis, hypertension, dyslipedemia, headache, a history of substance disorder, and two syncopal [blackout] episodes in August of 2007 [TR 11]. At Step Three, the ALJ found that North did not have an impairment, or combination of impairments, the severity of which meets or equals one of the listed impairments [TR 11-12]

At Step Four, the ALJ determined that North had a residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a); 416.967(a). The ALJ qualified this finding by stating that the claimant cannot climb ladders, ropes, or scaffolding, but can occasionally climb ramps and stairs, balance, kneel, crouch, and crawl. The ALJ noted that the claimant cannot have exposure to vibrating or hazardous machinery. The ALJ also found that the claimant requires simple work with one-or-two-step instructions, work that is low stress, and work that is job-focused [TR 12]. A residual functional capacity is a claimant's maximum remaining capacity to perform work-related activities despite the physical and/or mental limitations caused by the claimant's disability. 20 C.F.R §§ 404.1545(a)(1), 416.945(a)(1).

The ALJ determined from this residual functional capacity that North would be unable to return to his past relevant work as a welder, janitor, or tree-trimmer [TR 15]. The ALJ also found that if operating under the Medical-Vocational Guidelines, using them as a framework, a finding of "not disabled" would be indicated, and so determined transferability of job skills to be immaterial. [TR 15]. However, the ALJ noted the claimant could not be subject to a directed finding under the Medical-Vocational Guidelines as there are non-exertional factors limiting the claimant to less than a full range of sedentary work [TR 15-16]. The ALJ therefore called a Vocational Expert to determine if any jobs were available in significant numbers in the national economy (and Kentucky specifically) that someone with North's restrictions could perform [TR 16]. The Vocational Expert testified that for someone with the residual functional capacity of Mr. North, jobs exist in the local and national economy. Examples cited were: production worker (1000 jobs in Kentucky and 48,000 nationally), inspector (200 jobs in Kentucky and 13,000 nationally), and assembler (1,100 jobs in Kentucky and 50,000 nationally). Based on this testimony, the ALJ determined that Mr. North is capable of making a successful adjustment to other work available in significant numbers in the national (and regional) economy [TR 16]. The ALJ therefore determined that North was "not disabled" within the meaning of the Social Security Act [TR 16].

## II.    GENERAL STANDARD OF REVIEW

The power of the Federal District Court to review the decision of the Commissioner is limited to an examination of whether the decision is supported by substantial evidence and was made pursuant to the correct legal standard. 42 U.S.C. § 405(g); *see* Cutlip v. Secretary of Health and Human Services, 25 F.3d 284, 286 (6th Cir. 1994); *see also* Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683 (6th Cir. 1992); *see also* Jones v. Secretary of

Health and Human Services, 945 F.2d 1365, 1369 (6th Cir. 1991). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Secretary of Health and Human Services, 25 F.3d 284, 286 (6th Cir. 1994). The Court cannot conduct a review *de novo*, nor may it resolve conflicts in the evidence or make determinations of credibility. *See Id*. If the Commissioner's decision was made according to the proper legal standard and supported by sufficient evidence, then this Court must affirm, *even if the evidence could support a different determination as well.* Her v. Commissioner of Social Security, 203 F.3d 388, 389-390 (6th Cir. 1999). The court must, however, review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

### III. ANALYSIS

North argues on appeal that the ALJ's decision was not decided by the proper legal standards and was not supported by substantial evidence largely because the ALJ's determination of North's Residual Functional Capacity (RFC) did not give controlling weight to the RFC prepared by Dr. Mahboob [TR 495], North's treating physician, and allegedly failed to accord appropriate weight to the consulting opinion prepared by Dr. Hoskins [TR 271]. Claimant argues that the ALJ did not have substantial evidence to accord such weight as the ALJ did to these opinions and make the RFC determination he did. For the following reasons, this Court rejects North's arguments and finds that the Administrative Law Judge's decision was made according to the proper legal standard and based on substantial evidence.

# THE ALJ PROPERLY WEIGHED THE OPINIONS
# OF NORTH'S TREATING AND EXAMINING PHYSICIANS

The findings of treating physicians are required to be given controlling weight only when the physician's "opinion on the issue(s) of the nature and severity of [claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case." 20 C.F.R. §404.1527(d)(2); *see also* Walters v. Commissioner of Social Security, 127 F.3d 525, 530 (6th Cir. 1997). *See also* Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); *see also* Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 927 (6th Cir. 1987) ("Because there was substantial evidence to the contrary, the Secretary was not bound by the opinions of the treating physicians...."). The opinions of treating physicians are generally given considerable deference, especially compared to those of consulting or non-examining physicians, but subject to the restriction above. Walters, 127 F.3d at 530-531.

The ALJ must weigh each medical opinion in the record, and unless giving the previously-discussed controlling weight to the opinion(s), must give good reasons for the weight given. Wilson v. Commissioner of Social Security, 378 F.3d. 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d). In this case, the ALJ did not give Dr. Mahboob's RFC assessment considerable weight because the ALJ determined that it conflicted with Dr. Mahboob's own treatment notes, saying "there is nothing in the treatment notes that would support such limitations" [TR 14] as Dr. Mahboob assessed for the claimant. However, in assessing the claimant's RFC, the ALJ gave considerable weight to the treatment notes [TR 15]. Dr. Mahboob's RFC assessment of North indicated that claimant could lift and carry ten pounds frequently, could stand and/or walk less than two hours, could sit less than two hours, needed to

shift position every hour sitting, shift position every hour standing, and needed to walk around for ten minutes every hour, but did not need to lie down at unpredictable intervals; that claimant could never twist, stoop, crouch, climb stairs, or climb ladders, had limited ability to push and pull but no limits on fine manipulation or reaching (including overhead), and could be expected to miss about four days of work per month [TR 495-496]. Dr. Mahboob listed all of these as stemming from a bulging disc and a limited range of motion in the "L spine" [TR 496]. This Court has not found in the record any objective medical findings that support Dr. Mahboob's assessment of North's need to sit and stand at intervals, or walk at intervals.

There are other inconsistencies as well. Among other things, North reported in 2003 that he had hurt his back carrying a steel beam [TR 13, 433-434]. The ALJ made note of a radiology report from 2003, after the alleged onset date, that showed no abnormalities of the spine. In August 2005, North left the emergency room without completing treatment after alleging he hurt his back moving a pool table [TR 13, 233]. In September 2005 North sought medical attention for back pain due to a motorcycle accident six months earlier [TR 13, 311]. An MRI dated November 2005 indicates that Mr. North does have "evidence of a *mild* disc bulge at the level of L5-S1 and loss of signal at the level of l5-S1 disc space" [TR 322][emphasis added] and no evidence of any other abnormalities [TR 322]. In October 2006, North reported to the emergency room for back pain due to moving things at his home, but left without receiving treatment, despite attempts to locate him in or around the emergency room area [TR 13-14, 210, 212, 216]. North failed to keep an appointment for a knee MRI in February 2005 [TR 13, 196]. Treatment notes from Spring 2006 indicate that claimant reported to his doctor that he was continuing to work as a welder [TR 13, 198], and was on his knees often [TR 198]. In December 2006, treatment notes indicated claimant was doing well and tolerating his medications.

The ALJ also made note that the claimant's daily activities included driving, handling finances, and visiting relatives; and that the claimant had no problems with personal care and hygiene [TR 14, 109, 112, 128-30.] The ALJ determined from these (and other) considerations that Dr. Mahboob's assessment of the claimant's RFC was contradicted by the medical records. This Court has reviewed the record in full and finds that the ALJ's reasoning – that the treatment notes do not adequately support the treating physician's RFC assessment – is supported by substantial evidence ("more than a scintilla[...]less than a preponderance[...]," Cutlip v. Secretary of Health and Human Services, 25 F.3d 284, 286 (6th Cir. 1994) ), to determine that the claimant could have a greater degree of potential activity than Dr. Mahboob assessed. A reasonable person could conclude from the above notes that North is capable of performing some limited tasks for an eight-hour workday. Additionally, there is no documentation supporting Dr. Mahboob's reasoning for the movement instructions (must stand every hour, walk every hour, would miss four days at work per month, etc.).

Dr. Hoskins' consultative examination, performed in December 2006 [TR 272-276], indicates that claimant had at that time a slow gait, walked with a limp, and performed certain gaits with difficulty [TR 273]. Dr. Hoskins also noted that North sat without apparent discomfort and transferred to and from the exam table "without remarkable difficulty" [TR 273]. Hoskins noted that during the examination "no impairments were observed that clearly preclude communicating, socializing, understanding, learning, seeing, hearing, or completing tasks in a regular work environment" [TR 273]. Dr. Hoskins did make note that "musculoskeletal limitations are present to strongly impair walking, standing, carrying, light lifting or bending, squatting, crawling, climbing, and balancing" [TR 274] and that North claimed to have back pain when sitting that seemed "reasonable" to the doctor [TR 274]. Dr. Hoskins noted specifically

that this assessment was not exact, and his exam "may not completely define the extent of the patient's impairments" [TR 274]. Dr. Hoskins specifically recommended that his exam be weighed against other medical evidence and opinions [TR 274].

The ALJ incorporated many of Dr. Hoskins' comments about limitations on walking, standing, light lifting, etcetera, when determining the RFC of Mr. North and limiting him to sedentary work. He also examined the medical records, per Dr. Hoskins' recommendation. Mr. North argues that Dr. Hoskins' use of the phrasing "strongly impairs" must clearly show North to be disabled and to assess anything besides complete disability from Dr. Hoskins' report is unsupported. In the opinion of this Court, however, there is enough evidence in the report of capacity to interact in a work environment and complete tasks that a reasonable person could draw the conclusion that North could perform some varieties of work.

Supported by substantial evidence, examples of which were cited with specificity by the ALJ, to determine that Dr. Mahboob's RFC assessment conflicted with the record, in conjunction with all available medical records including the report by Dr. Hoskins, the ALJ declined to accord controlling weight to Dr. Mahboob's opinion.

The Court concludes that the weight given to the opinions of North's treating and examining physicians was based on substantial evidence and in accordance with the proper legal standards.

## IV. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby

**ORDERS:**

(1) the plaintiff's motion for summary judgment [DE 11] is **DENIED**;

(2) the Commissioner's motion for summary judgment [DE 12] is **GRANTED**;

(3) the plaintiff's request for attorney's fees and costs pursuant to 28 U.S.C. § 2412(d) is **DENIED** pursuant to same;

(4) the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and decided by the proper legal standards; and

(5) A judgment will be entered contemporaneously with this Opinion and Order.

This June 17, 2010.

Signed By:

*Karl S. Forester* KSF

United States Senior Judge